STATE OF NORTH CAROLINA v. LARRY WAYNE POOLE

No. 48A81

(Filed 30 March 1982)

**1. Constitutional Law § 46— motion to remove counsel—duty of trial court**

The trial court's sole obligation when faced with a request that counsel be withdrawn is to make sufficient inquiry into defendant's reasons to the extent necessary to determine whether defendant will receive effective assistance of counsel.

**2. Constitutional Law § 46— motion to remove appointed counsel—denial by trial court—sufficiency of court's inquiry**

In an armed robbery case in which defendant moved to dismiss his court-appointed attorney on the grounds that the attorney was inexperienced, defendant was able to employ his own attorney, and there was a conflict between defendant and his attorney because the attorney had indicated he would withdraw if defendant took the witness stand, the trial court adequately inquired into the reasons for defendant's dissatisfaction with his attorney and properly concluded that defendant was unable to employ counsel of his own choosing, that no conflict existed between defendant and his attorney which would render the attorney's representation ineffective, and that the attorney could provide defendant with the effective assistance of counsel.

**3. Criminal Law § 91.4— denial of continuance to obtain new counsel**

The trial court did not err in the denial of a continuance to a defendant who was represented by court-appointed counsel so that defendant might obtain counsel of his own choosing where the trial court properly concluded that defendant was in no financial position to employ counsel, defendant made an insufficient showing of necessity for substitution of new counsel, and defendant failed to show prejudice because of the representation he received from his appointed counsel.

**4. Judges § 5— denial of motion to recuse—failure to have motion considered by another judge**

The trial court in an armed robbery case did not err in refusing to recuse itself upon motion of the defendant or in failing to have the motion to recuse considered by another judge since (1) the motion was not in writing, accompanied by supporting affidavits and timely filed as required by G.S. 15A-1223(c) and (d), and (2) defendant's unsupported assertion that the trial judge had made remarks out of his presence did not demonstrate "sufficient force" to require that findings of fact be made.

**5. Constitutional Law § 31— indigent defendant—denial of funds for private investigator**

The constitutional and statutory rights of an indigent defendant charged with armed robbery were not violated by the trial court's denial of his pretrial motion for funds to hire an investigator to locate and interview the witnesses since the determination of the names and locations of the key witnesses should

have been little problem for any attorney, and defendant failed to suggest any witnesses or evidence that a private investigator could have reasonably expected to discover.

**6. Criminal Law § 114.3— instruction—no expression of opinion**

The trial judge did not express an opinion in violation of G.S. 15A-1232 when he referred to "the taker, that is, the defendant" while defining armed robbery where it is clear that the trial judge did not convey to the jury that he felt defendant was the taker when the charge is read as a whole.

**7. Criminal Law § 134.2— sentencing—right of allocution**

While it may be the better practice for the trial court specifically to inquire if the defendant wishes to speak prior to sentencing, G.S. 15A-1334(b) does not command this practice.

BEFORE *Rousseau, Judge,* at the 23 February 1981 Criminal Session of Superior Court, GUILFORD County.

Defendant was tried on indictments, proper in form, for three armed robberies. He was found guilty by a jury and received two concurrent life sentences and a consecutive sentence of forty years imprisonment. Defendant appeals the life sentences to this Court as a matter of right. We allowed his motion to bypass the Court of Appeals for the forty-year sentence on 7 October 1981.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Harry H. Harkins, Jr., for the State.*

*Adam Stein, Appellate Defender, and Malcolm R. Hunter, Jr., Assistant Public Defender, for the defendant.*

CARLTON, Justice.

I

In light of the contentions presented by defendant on this appeal, an extensive recitation of the evidence is unnecessary. Briefly, evidence for the State tended to show that at approximately 11:20 p.m. on 17 December 1980 defendant and an accomplice accosted Delores Greeson, the manager of the Steak and Ale Restaurant on Teague Street in Greensboro, as she was entering the back door of the restaurant. Defendant and his accomplice were armed. Defendant, with pistol in hand, took Greeson into the main area of the restaurant and, using profane and vulgar language, announced to the approximately thirteen persons, including employees and customers present, that, "This is a

hold-up." Michael Holden, a district manager for Steak and Ale, was able to slip out the front door. He ran to a nearby house and called the police for assistance. Meanwhile, defendant ordered some of the persons in the restaurant to get down on the floor and to give him their money. Defendant's accomplice held a gun on the persons on the floor. Defendant took Greeson to the cash register and told her to open the safe. She gave him money from the cash register. Roger Hamill, a customer in the restaurant, was forced to give up his wallet. Another customer, Clifton Kimball, was robbed of approximately $600. Defendant then ordered all of the occupants of the restaurant into the ladies' rest room and told them that he was going to remove the meat from the freezer and that they should remain in the rest room at least twenty minutes; that if he heard any sound out of them he would "blow [their] brains out."

As a result of Holden's call, four police cars responded and sealed off the ends of the street which ran by the restaurant. Officers Deich and Allen observed a car coming from the front of the restaurant with its lights out and proceeding in their direction on Teague Street. They turned their headlights and blue lights on and the approaching car immediately was put in reverse and began to proceed backwards at a high rate of speed. Officers Deich and Allen pursued and the car was forced to a stop near the Steak and Ale Restaurant. Defendant and his accomplice were ordered out of the car and over $1400 which had been taken from Greeson and Kimball was recovered. Hamill's wallet, containing $222, was also found. A search of the car yielded two guns, one a .32 caliber long weapon and the other a .22 caliber revolver.

Defendant offered no evidence and was found guilty of all three charges of armed robbery. He received the sentences set out above and appeals his convictions to this Court. Other facts necessary to an understanding of this case are set out in the opinion below.

## II

Defendant first assigns error to the trial court's alleged failure to resolve the issues raised by defendant's pretrial motion to dismiss his court-appointed counsel, Wendell H. Sawyer. Defendant contends that the trial court's inquiry into the reasons behind defendant's motion was insufficient to allow it to conclude

that Sawyer could provide effective assistance of counsel and that no conflict existed between defendant and Sawyer which would render Sawyer's representation ineffective. In order to answer these arguments, it is necessary summarily to review the colloquy which followed defendant's request that Sawyer be dismissed and that defendant be allowed to hire private counsel or represent himself.

On the morning of 24 February 1981, when the case was called for trial, Sawyer, defendant's trial counsel, informed Judge Rousseau that his client had just told him that he, defendant, wanted another lawyer. Judge Rousseau then began questioning defendant about the reasons for his dissatisfaction with Sawyer. Defendant's reasons were basically three:

(1) that Sawyer was too inexperienced, having practiced law only since the summer;

(2) defendant obtained some money with which he planned to hire private counsel and had talked with a lawyer about representing him; and

(3) defendant and Sawyer had a conflict of interest because Sawyer had indicated that he would withdraw from the case if defendant took the witness stand.

In addition to requesting that his court-appointed counsel be dismissed, defendant made clear that if his motion were granted he would have to be granted a continuance in order to prepare for trial.

[1] Defendant contends that when faced with reasons such as these for requesting dismissal of counsel, the trial judge should conduct extensive inquiry and make findings of fact. The established law, however, is that the trial judge must satisfy himself only that the "present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective." *State v. Thacker,* 301 N.C. 348, 353, 271 S.E. 2d 252, 256 (1980). "[T]he obligation of the court [is] to inquire into defendant's reasons for wanting to discharge his attorneys and to determine whether those reasons were legally sufficient to require the discharge of counsel." *State v. Hutchins,* 303 N.C. 321, 335, 279 S.E. 2d 788, 797 (1981). Once it

becomes apparent that the assistance of counsel has not been rendered ineffective, the trial judge is not required to delve any further into the alleged conflict. The trial court's sole obligation when faced with a request that counsel be withdrawn is to make sufficient inquiry into defendant's reasons to the extent necessary to determine whether defendant will receive effective assistance of counsel.

[2] The inquiry into defendant's reasons for wanting Sawyer dismissed, as set forth by the record, reveals that Judge Rousseau adequately inquired into the reasons for defendant's dissatisfaction and properly concluded that Sawyer could provide effective assistance of counsel. We will review the reasons given by defendant to dismiss Sawyer *seriatim* and show that none was sufficiently detrimental to the attorney's ability or to the attorney-client relationship to justify dismissal of court-appointed counsel.

Defendant told Judge Rousseau, "Your Honor, my attorney has been practicing law since this summer. We have no defense whatsoever. I don't feel that he is really capable or able to do anything about the charges. I don't think he has had enough experience." Mere inexperience is not sufficient in itself to render the assistance of counsel ineffective. *E.g., United States ex rel. Williams v. Twomey*, 510 F. 2d 634 (7th Cir.), *cert. denied*, 423 U.S. 876 (1975). As stated in *Twomey:*

> [T]he mere inexperience of trial counsel is not in itself enough to establish want of effective assistance of counsel.
>
> Necessarily, every lawyer must begin his career without experience. His first case is not inevitably so ill-prepared or poorly presented as to justify a finding of his incompetence. Portia without experience was a remarkably successful representative of Antonio. In estimating counsel's performance, the issue is not how much experience he has had, but how well he acted.

*Id.* at 638-39.

While the record discloses no specific questions from the trial court to defendant's counsel as to the amount of time he had spent in the trial court since receiving his law degree, we think the lengthy colloquy was clearly sufficient to satisfy the trial

court that Sawyer was competent to proceed in defendant's behalf. The very manner in which defense counsel handled this portion of the proceedings along with other pretrial proceedings already handled was sufficient to give the trial court sufficient indication of defense counsel's ability. The trial court was in a position far superior to ours to observe Sawyer's abilities and we are not prone to find an abuse of the trial court's discretion when nothing more than the defendant's naked assertion that his trial counsel was inexperienced is placed before us.

Moreover, a review of the entire record before us discloses that defendant had the benefit of a most able member of our bar. Every witness who testified for the State was thoroughly cross-examined and defense counsel successfully challenged the State's attempt to have different items admitted into evidence. He asked for and received voir dire hearings at every opportunity to challenge the State's evidence and was successful in excluding an eyewitness identification and certain damaging statements made by defendant to an officer. Numerous pretrial and post-trial motions and an articulate plea on defendant's behalf at the sentencing hearing indicate representation by most competent counsel. Indeed, we do not believe defendant could have been more ably represented, especially in light of the overwhelming evidence of guilt against him.

Defendant's second reason for wanting his counsel dismissed was that he had managed to get some money and had spoken with a private attorney about representing him. With regard to this reason, we also find that the trial court's inquiry was more than adequate to ensure that defendant would receive effective assistance. The colloquy discloses that defendant first told the trial court that "I have managed to get some money, and I have been in touch with Mr. Calhoun who told me just now that he would come and talk to me. And I spoke with him yesterday." Later, defendant's statements were such as to lead the trial court to disbelieve any claim that defendant was in a position to retain counsel of his own choosing. At a later point, defendant stated to the court, "I am indigent." Later, defendant stated, "I do want to be represented by counsel, and I am entitled to counsel by the State of North Carolina, as an indigent *because I have no money.*" (Emphasis added.) From the foregoing, the trial court clearly had sufficient information before it to determine that defendant's

assertion that he was able to employ counsel of his own choosing was nothing more than a spurious attempt to have his case continued. We note that defendant continues to be represented by appointed counsel on this appeal.

Defendant also contends that the trial court failed to make sufficient inquiry to determine whether a conflict of interest existed between defendant and his lawyer in that defendant wanted to testify and Mr. Sawyer had told him that he would withdraw from the case if the defendant did testify. This contention is clearly without merit. While Mr. Sawyer did initially state to the trial court that he might have to withdraw for ethical reasons without stating what the ethical reasons were, he subsequently provided Judge Rousseau with a copy of *State v. Robinson*, 290 N.C. 56, 224 S.E. 2d 174 (1976). *Robinson* involved a dilemma faced by a defense attorney in a situation almost identical to that disclosed by the record before us. In *Robinson*, the defendant indicated to his trial counsel that he wished to take the witness stand in his own behalf and that he intended to call a witness and elicit testimony which would be perjured. The trial court denied defendant's motion to discharge his counsel because of the trial counsel's refusal to follow the defendant's suggested trial tactics. In affirming, this Court stated:

> A mere disagreement between the defendant and his court-appointed counsel as to trial tactics is not sufficient to require the trial court to replace court-appointed counsel with another attorney. Trial counsel, whether court-appointed or privately employed, is not the mere lackey or "mouthpiece" of his client. He is in charge of and has the responsibility for the conduct of the trial, including the selection of witnesses to be called to the stand on behalf of his client and the interrogation of them. He is an officer of the court and owes duties to it as well as to his client. In this there is no conflict of interest. Clearly, the client has no right to insist that counsel assist him by presenting in evidence testimony which counsel knows, or reasonably believes, constitutes perjury. This was the sole basis for the discord between the defendant and his court-appointed trial counsel, Mr. Burns. Mr. Burns' refusal to be a party to the introduction of what he reasonably believed to be perjured testimony and his

in bringing this to the attention of the trial court was commendable, not basis for his removal as a disloyal counsel.

The existence of such a conflict of wills between the defendant and his court-appointed counsel did not require the trial court to replace such counsel with another attorney. Under these circumstances, the appointment of another attorney rested in the sound discretion of the trial court and we find in this record no indication of abuse of that discretion. See: *United States v. Young*, 482 F. 2d 993 (5th Cir. 1973). There was, therefore, no error in the denial of the defendant's motion for the appointment of another counsel.

*Id.* at 66, 224 S.E. 2d at 179-80.

Clearly, the trial court's perusal of *Robinson* was sufficient inquiry into the defendant's contention concerning defendant's alleged conflict of interest with his attorney. With the facts in *Robinson* so similar to those involved in the present case, any further inquiry by the trial court into this particular matter would obviously have been useless.

We hold, therefore, that the trial court made adequate inquiry into all the reasons given by defendant for wanting substitute counsel. As we stated in *Thacker*,

While some situations may indeed require an in-depth inquiry and detailed findings of fact, the conflict in the case *sub judice* is clearly not one of them. The trial court made sufficient inquiry to learn that the conflict here was not such as to render the public defender's assistance ineffective. Having so learned, his failure to inquire further was entirely proper.

301 N.C. at 353, 271 S.E. 2d at 256.

Finally, under this first question presented for review on appeal, defendant contends that the trial court erred by failing "after proper inquiry by the court and specific requests by the defendant, to allow the defendant to represent himself." There is no basis for this contention. While defendant at one point during the lengthy colloquy with the trial court indicated that he could defend himself, it is clear from a reading of the colloquy that defendant really wanted the trial court to grant him a continuance so that he could seek counsel to be privately employed.

These statements made by defendant to the trial court best reveal his true intentions:

> You're telling me that I am to represent myself, although I am not an attorney. I don't even have a high school education. You, as a Judge, say that I have to defend myself.
>
> . . . .
>
> . . . I am entitled to counsel by the State of North Carolina, as an indigent because I have no money.
>
> . . . I do not have the counsel. And I definitely do not have the education to represent myself.

We also note that the trial court on at least three occasions advised the defendant that he had the right to represent himself. Our review of the record discloses that the closest defendant came to requesting that he represent himself was in the following statement: "If I had time to work on the case and you will grant me a continuance of thirty days, then I will represent myself in the case." Following this statement, the trial court instructed Mr. Sawyer to be prepared to represent defendant for trial at 2:00 p.m. that afternoon. We do not agree with defendant that his latter statement constitutes a specific request that he be allowed to represent himself. Read contextually, defendant's plea was obviously for a continuance in order that he might make what the trial court had properly concluded would be futile efforts to retain counsel of his own. The thrust of defendant's statements throughout this colloquy indicate clearly that defendant not only did not wish to represent himself but realized that he was unqualified to do so.

State v. Gray, 292 N.C. 270, 233 S.E. 2d 905 (1977), involved facts strikingly similar to those disclosed by this record. In Gray, both defendant and his counsel moved on the morning of trial that counsel be withdrawn from the case. The trial court denied both motions. The grounds given by defendant in support of his motion were that the attorney had, on several occasions, urged defendant to plead guilty to first degree burglary, and had "misled" defendant, his wife and mother, and had "put distrust" in his witnesses' hearts. Defendant also complained that he and his attorney had not been able to communicate because the attorney had come

to see him infrequently and only to get him to plead guilty. The trial court questioned defendant thoroughly and also questioned defense counsel to determine his qualifications. This Court, speaking through Justice Exum, stated:

> It is clear that defendant had no reasonable objection to his attorney's conduct or preparation of his case. His complaints are general and vague, and the emphasis of his objections shifted during the hearing. His counsel, as appears from the record, was well qualified and did, in fact, represent defendant in an exemplary fashion. Defendant's assertion that he wished to employ his own counsel, made as it was, on the day trial was to begin . . ., was no ground for the dismissal of his court-appointed counsel. Defendant did not claim he had the funds to employ counsel. There is not a scintilla of evidence indicating defendant's intention or desire to represent himself; indeed, he seems to have been more than usually aware of the critical role played by counsel in criminal trials.
>
> While defendant may have been peeved with his attorney for personal reasons, the court had no reason to doubt that attorney's effectiveness and capability as an advocate or to suspect the relationship between defendant and his counsel to have deteriorated so as to prejudice the presentation of his defense. *See State v. Robinson, supra,* [290 N.C.] at 66-67, 224 S.E. 2d at 179-80. . . . To have allowed the motions to remove counsel would have significantly delayed defendant's trial without the slightest demonstration of any potential benefit to his case.

*Id.* at 281-82, 233 S.E. 2d at 913. So it is here. The trial court made more than adequate inquiry into defendant's complaints. The trial court, as noted above, had ample information before it to conclude that defendant had no real basis for wanting his counsel withdrawn. Defendant's counsel was well-qualified and the record discloses that he represented defendant in an exemplary fashion. There is no real evidence to indicate that defendant wanted to represent himself or that he had sufficient funds to employ counsel of his own choosing. He was clearly aware of the critical role played by counsel in criminal trials. Here, as in *Gray,* there is absolutely no indication that a delay in defendant's trial would have resulted in the slightest benefit to his case.

### III

[3]  Defendant next contends that the trial court erred by refusing to allow him a reasonable opportunity to retain a private attorney. We find no merit to this contention.

It is well-established that a motion to continue is ordinarily addressed to the trial judge's sound discretion and his ruling thereon will not be disturbed except upon a showing of abuse of discretion. *E.g., State v. Baldwin,* 276 N.C. 690, 174 S.E. 2d 526 (1970). However, when a motion to continue is based on a constitutional right, the question presented is a reviewable question of law. *Id.; accord, State v. Smathers,* 287 N.C. 226, 214 S.E. 2d 112 (1975). Both the state and federal constitutions secure to every man the right to be defended by counsel in all criminal prosecutions. N.C. Const. art. I, § 23; U.S. Const. amend's VI & XIV.

Relying on these principles, defendant contends that he demonstrated compelling reasons to the trial court for the continuance of his case in order that he might retain counsel of his own choosing. We disagree. As noted in the preceding section of this opinion, we think the trial court properly concluded from its lengthy inquiry that defendant was in no financial position to employ counsel of his own choosing. Indeed, a reading of the colloquy compels the conclusion that defendant was requesting that the court appoint substitute counsel or simply continue the case for whatever reason defendant felt might be beneficial to him.

A defendant's right to select his own counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same. *Lee v. United States,* 235 F. 2d 219 (D.C. Cir. 1956). It is implicit in the constitutional guarantees of assistance of counsel and confrontation of one's accusors and witnesses against him that an accused and his counsel shall have reasonable time to investigate, prepare and present his defense. However, no set length of time is guaranteed and whether defendant is denied due process must be determined under the circumstances of each case. *State v. McFadden,* 292 N.C. 609, 234 S.E. 2d 742 (1977). After reviewing other factors revealed by the record before us we determine that defendant has not been denied any constitutional guarantees in the trial court's failure to continue his case. We note that although the in-

dictments under which defendant was convicted were returned on 19 January 1981, he was first indicted on 5 January 1981 under the name which he had given to the officers at the time of his arrest. In light of his misrepresentation to the police, defendant cannot complain that he had "been indicted only about thirty days prior to trial." Defendant was arrested on 18 December 1980 and received notice of the charges against him when he was originally indicted on 5 January 1981. Additionally, defendant had previously been granted a continuance of his trial. The trial was originally calendared for 3 February 1981, and, when it was called, was continued at defendant's request to 23 February 1981. His argument, therefore, is based on a denial of his motion for a *second* continuance of his trial.

In *United States v. Hampton,* 457 F. 2d 299, 301-02 (7th Cir.), *cert. denied,* 409 U.S. 856 (1972), the seventh circuit stated:

> [T]he trial court was justified in denying the motion to withdraw when defendant was not prepared to substitute new counsel, and further, that it was proper for the trial judge to contest the bona fides of defendant's last-minute request for a delay in the trial by requiring him to retain new counsel on the same day. . . . On the record before us, however, . . . the trial court was justified in ruling that the prompt administration of justice outweighed defendant's meager showing of necessity for substitution of a hypothetical new attorney. On appeal, defendant has again been represented by court-appointed counsel. He has failed to put forward any indicia of prejudice because of his appointed representation. Therefore, we feel no justifiable basis exists for a substitution of his attorney on the day of his trial. Without any such justifiable basis, there is no constitutional right under the Sixth Amendment to a continuance to enable defendant to seek new counsel on the day of the trial.

(Footnote omitted.) These statements apply with equal force to the factual circumstances now before us. Defendant's meager showing of necessity for substitution of new counsel and a complete lack of prejudice because of defendant's appointed representation fully support the trial court's conclusion that a continuance under the circumstances was not justified.

## IV

[4] Defendant next contends that the trial court erred by refusing to recuse itself on motion of the defendant and by failing to have the motion to recuse considered by another judge.

During the lengthy colloquy with defendant prior to trial, the trial judge indicated at one point that he would not rule favorably on defendant's request for substitute counsel. Defendant then stated, "Well, then I move that as a Judge you're biased against us. You have made remarks out of my presence. And I move that you should be taken off the bench on this trial." The trial court inquired as to what remarks it had made and the defendant replied,

> You made the statement the other day during a motion, I think, that you were told something about a knife incident, and you made a statement, something about you were not going to protect criminals in the dark. I haven't been to trial, and I think under due process I am not guilty as of now. I think that is enough.

> G.S. 15A-1223(b) (1978) provides in pertinent part:

> (b) A judge, on motion of the State or the defendant, must disqualify himself from presiding over a criminal trial or other criminal proceeding if he is:

> (1) Prejudiced against the moving party or in favor of the adverse party; or

> . . . .

> (4) For any other reason unable to perform the duties required of him in an impartial manner.

Moreover, it is well-established in this jurisdiction that a trial judge should either recuse himself or refer a recusal motion to another judge if there is "sufficient force in the allegations contained in defendant's motion to proceed to find facts," *North Carolina National Bank v. Gillespie*, 291 N.C. 303, 311, 230 S.E. 2d 375, 380 (1976), or if "a reasonable man knowing all the circumstances would have doubts about the judge's ability to rule on the motion to recuse in an impartial manner," *McClendon v. Clinard*, 38 N.C. App. 353, 356, 247 S.E. 2d 783, 785 (1978); *accord, State v. Hill*, 45 N.C. App. 136, 141, 263 S.E. 2d 14, 17, *cert. denied*, 300 N.C. 377, 267 S.E. 2d 680 (1980).

We find no merit to defendant's contention that the trial judge either should have disqualified himself or should have referred the motion for recusal to another judge. We note first that G.S. 15A-1223(d) requires that a motion to disqualify a judge be filed no less than five days before the time the case is called for trial unless "good cause is shown for failure to file within that time." The motion must also be in writing and accompanied by supporting affidavits. G.S. § 15A-1223(c) (1978). Neither requirement was met here and we find no good cause to excuse the failure to comply.

We also do not find "sufficient force in the allegations" made by defendant to require that Judge Rousseau either should have disqualified himself or should have referred the motion to another trial judge. It is clear from the record before us that defendant's motion was a hasty response to a ruling by the trial court with which he was dissatisfied. Defendant's unsupported assertion that a trial judge had made remarks out of his presence does not demonstrate "sufficient force" in defendant's allegations. The record on appeal contains no remarks made by the trial court out of defendant's presence. Moreover, the trial judge indicated that he had made no such comment. We do not believe that "a reasonable man knowing all of the circumstances would have doubt about the judge's ability to rule on the motion to recuse in an impartial manner." This assignment of error is overruled.

V

[5] Defendant next contends that the trial court erred by denying his pretrial motion for funds to hire an investigator. In support of his motion, defendant alleged that there were approximately fourteen witnesses to the alleged crimes, that the State refused to reveal the names and addresses of the witnesses to the crimes, that counsel for defendant was not an expert in criminal investigation, that counsel for defendant did not have the time to find and interview the witnesses and that locating and interviewing the witnesses was essential to "providing the defendant with an adequate defense."

The rules applicable to this contention were well-stated by Justice Copeland, speaking for a unanimous Court, in *State v. Parton*:

It is well recognized that in order to comply with an indigent defendant's constitutional rights to effective assistance of counsel and equal protection under the laws, the State must provide the basic tools required to prepare an adequate defense at trial or on appeal. (Citations omitted.) However, it is equally well established that the constitution does not require the State to furnish a defendant with a particular service simply because the service might be of some benefit to his defense. (Citations omitted.) Whether investigative assistance is constitutionally mandated must be determined after consideration of the facts of the case; defendant must demonstrate that the State's failure to provide funds with which to hire an investigator substantially prejudiced his ability to obtain a fair trial. (Citations omitted.) Our Court has held that to deny an indigent defendant the assistance of a state-paid investigator does not, *ipso facto*, constitute a denial of equal protection of the laws, even though such an investigator might be available under the provisions of G.S. 7A-468 to indigent defendants represented by public defenders and is available to defendants who are able to pay for the investigative services. *State v. Gray*, 292 N.C. 270, 233 S.E. 2d 905 (1977); *State v. Montgomery*, 291 N.C. 91, 229 S.E. 2d 572 (1976); *State v. Tatum*, [291 N.C. 73, 229 S.E. 2d 562 (1976)]. Likewise, this Court has interpreted our state statutes, G.S. 7A-450(b) and 7A-454, as requiring that investigative assistance be provided only after a showing by defendant "That there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help it is probable that defendant will not receive a fair trial." (Citations omitted.) The decision whether to provide a defendant with an investigator under the provisions of those statutes is a matter within the discretion of the trial judge and will not be disturbed on appeal absent an abuse of that discretion. (Citations omitted.) Thus, there is no constitutional or statutory requirement that the State provide an indigent defendant with investigative assistance merely upon the defendant's request.

303 N.C. 55, 66-67, 277 S.E. 2d 410, 418-19 (1981) (footnote omitted). Here, we find that defendant failed to demonstrate such a necessity for the assistance of an investigator that to deny his request would amount to a violation of his constitutional or

statutory rights. The indictments returned against the defendant gave the names of those persons who would undoubtedly be testifying against him. The arrest warrants indicated the names of the arresting officers. Determination of the names and location of the key witnesses to these crimes should have been little problem for any attorney. While defendant complains that the State refused to disclose its list of witnesses to him, there exists no statutory or common law right to discover the names and addresses of State's witnesses. *State v. Smith,* 291 N.C. 505, 231 S.E. 2d 663 (1977). Defendant fails to suggest any witnesses or evidence that a private investigator could have been reasonably expected to discover. In light of the overwhelming evidence of guilt of this defendant, we find that there was "no reasonable likelihood that an investigator could discover evidence favorable to the defendant." As Justice Lake stated in *State v. Montgomery*:

> Nothing whatever in the record, suggests the existence of any person who might be able or willing to testify that the alleged offense did not occur, or that it was perpetrated by someone other than the defendant. Consequently, there is nothing to indicate that the employment of an investigator would have been of any assistance whatever to counsel appointed by the court to represent the defendant in this matter.

291 N.C. 91, 97, 229 S.E. 2d 572, 577 (1976).

This assignment of error is overruled.

## VI

[6] Defendant next contends that the trial court erred by expressing an opinion to the jury, in violation of G.S. 15A-1232, indicating that it felt that defendant was the robber. We find the trial court's mere slip of the tongue to be without any conceivable prejudicial error.

While defining armed robbery, the trial court stated,

> Now, as I have said, there are three cases, members of the jury, wherein the defendant has been accused of robbery with a firearm or armed robbery, which is the taking and carrying away the personal property of another from that person's person or in that person's presence, without his con-

sent, by endangering or threatening the person's life with a firearm, *the taker, that is, the defendant* knowing that he was not entitled to take the property and intending at the time to deprive the owner of its use permanently, or someone else of its use permanently.

(Emphasis added.) Defendant contends that the underlined portion of the charge indicates that the trial judge stated as a fact to the jury that defendant *was* the taker and therefore expressed an opinion in violation of our statutes.

It is well established in this jurisdiction that a charge is to be construed as a whole and isolated portions of a charge will not be held prejudicial where the charge as a whole is correct and free from objection. *State v. Slade*, 291 N.C. 275, 229 S.E. 2d 921 (1976). "It is not sufficient to show that a critical examination of the judge's words, detached from the context and the incidents of the trial, are capable of an interpretation from which an expression may be inferred." *State v. Gatling*, 275 N.C. 625, 633, 170 S.E. 2d 593, 598 (1969). In *Slade*, the trial court in its charge to the jury referred to one defendant as an "aider and abettor" and another as a "principal." This Court found no error, citing the rules stated above.

Here, reading the charge as a whole, it is clear that the trial judge did not convey to the jury that he felt defendant was the taker. Indeed, in the very sentence in which the trial judge committed this *lapsus linguae*, the trial court stated that defendant had "been accused" of the three charges of armed robbery. Moreover, the trial court gave, at the appropriate place in its instructions, the usual disclaimer that it had no opinion as to what the jury's verdict should be and that anything said by the trial court should not be considered by the jury as any expression of opinion.

This assignment of error is overruled.

## VII

[7] Defendant finally contends that the trial court erred in sentencing him without first affording him an opportunity to make a statement pursuant to the provisions of G.S. 15A-1334(b). That statute provides in pertinent part that "the defendant at the [sentencing] hearing may make a statement in his own behalf."

Just prior to sentencing, the trial court stated, "Anything before I pass sentence?" Trial counsel then proceeded to appeal for defendant prior to imposition of sentence. The record reflects no attempt by defendant to make any additional statement. Defendant contends, however, that G.S. 15A-1334(b) codifies the common law right of allocution, which recognized that the court's failure to ask defendant if he had anything to say before sentence was imposed required reversal. Put another way, defendant contends it is mandatory under G.S. 15A-1334(b) that he be allowed to speak and that it is not sufficient that his counsel spoke on his behalf.

We find no support for the proposition of law argued by defendant. While it is true that the United States Supreme Court has held that Rule 32(a) of the Rules of Federal Criminal Procedure requires a district judge before imposing sentence to afford every convicted defendant an opportunity personally to speak in his own behalf, *Green v. United States*, 365 U.S. 301, 81 S.Ct. 653, 5 L.Ed. 2d 670 (1961), that same court has held that the failure of a trial court to ask defendant represented by counsel whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. "It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed. 2d 417, 421 (1962). No constitutional right being involved in the question before us, we turn to an interpretation of our own statute.

A clear distinction exists between the federal statute and G.S. 15A-1334(b): The federal statute requires the district court affirmatively to afford a defendant an opportunity to speak before sentencing while G.S. 15A-1334(b) provides simply that a defendant "may make a statement in his own behalf." Had our Legislature intended for our statute to impose the same requirement as the federal statute, we think it would have plainly said so. While it may be the better practice for the trial court specifically to inquire if the defendant wishes to speak prior to sentencing, our statute does not command this practice. *State v. Martin*, 53 N.C. App. 297, 280 S.E. 2d 775 (1981).

It should be noted that we are not dealing here with a situation in which defendant was affirmatively denied an opportunity to speak during the sentencing hearing. Nor is it suggested that in imposing sentence the trial court was either misinformed or uninformed as to any relevant circumstances. It appears from the record that trial counsel had been fully coaxed by defendant as to those matters defendant wanted brought to the trial court's attention. Indeed, there is no claim that defendant would have had anything at all to say if he had formally been invited to speak.

This assignment of error is overruled.

We have found no merit in any of the contentions presented to us by this defendant. Even had we done so, it is difficult to think that any prejudice could have resulted to this defendant in light of the overwhelming evidence of guilt against him. Numerous eyewitnesses recounted in detail the terroristic tactics used by this defendant in accomplishing these robberies, including threats against the lives of the innocent victims which were made in a vulgar, crude and callous manner, with total disregard for their lives and safety. Diligent police response to the call for help brought about defendant's apprehension as he was fleeing the scene of the crime. All monies stolen were then found in his pocket and pistols in his car. As the trial judge stated to trial counsel, "I don't know when I have heard a more open and shut case."

The record also reflects that defendant's attitude toward the trial court was impertinent and that he fully intended to halt the trial proceedings if at all possible. He frequently interrupted his counsel and constantly coaxed him into making statments unnecessary to these trial proceedings. We commend trial counsel and the trial court for exhibiting extraordinary patience with a defendant who was, as defendant's appellate counsel concedes, "admittedly contentious."

We think it not inappropriate to note that this defendant's constitutional rights have been protected at every stage of these proceedings. He has had the benefit of free and able counsel, both in the trial court and before this Court, at great cost to the taxpayers of North Carolina. We find that defendant had a fair trial free from prejudicial error.

No Error.