STATE OF NORTH CAROLINA
v.
RAYSHAWN LADELL HICKSON, Defendant.
No. COA07-321
Court of Appeals of North Carolina.
Filed June 17, 2008
This case not for publication
Attorney General Roy Cooper, by Assistant Attorney General Jason T. Campbell, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Katherine Jane Allen, for defendant-appellant.
GEER, Judge.
Defendant Rayshawn Ladell Hickson was convicted of robbery with a dangerous weapon and possession of a firearm by a felon in a two-stage trial. Defendant was first tried with a co-defendant on the robbery charge. Following defendant's conviction of robbery with a dangerous weapon, the jury was reconvened for a trial on the firearm charge. On appeal, defendant primarily argues that the trial court failed to conduct an adequate inquiry into defendant's complaint, made following the robbery conviction, that defense counsel was providing ineffective assistance of counsel. We hold that defendant has failed to demonstrate reversible error in light of (1) the fact that the trial court had an opportunity to observe and assess the quality of counsel's performance throughout the robbery trial, and (2) the very limited nature of the second phase of the trial, requiring only that the State prove defendant was a felon on the date of the robbery.

Facts
The State's evidence tended to show the following facts. On 23 June 2003, a group of people met at an apartment in Winston-Salem to play cards and socialize. During the evening, one of the guests, Kanesha Creasy, received a cell phone call from Kenneth Pinkney, a friend. Pinkney asked where she was, who was present, and whether he could come to the party. Creasy did not know at the time that Pinkney was angry at one of the other guests, Joe White, because Pinkney believed that White was involved in a shooting at his grandmother's house the previous day.
After Creasy told Pinkney that he could come over, he took a taxi to the apartment with three other men: defendant, Rayshawn Staley, and another man identified only as Davis. Staley and Davis initially stayed in the taxi while Pinkney and defendant entered the apartment. Defendant had a sophisticated assault rifle, and Pinkney had a revolver. Creasy opened the door, but tried to stop them when she realized they were armed.
Once inside, the two men found White, who had hidden in a pantry. Pinkney asked White if he knew who had "shot up" his grandmother's house. Pinkney kept his gun pointed toward the floor. According to several of the witnesses, defendant then pointed his gun at White, and ordered White to empty his pockets. Defendant took White's money, and Pinkney and defendant left the apartment. Before getting into the taxi, defendant fired several shots into the air. Defendant kept the money taken from White, refusing to share it with anyone else.
On 8 September 2003, defendant was indicted for two counts of robbery with a dangerous weapon  one of which was ultimately dismissed  and one count of possession of a firearm by a felon. Defendant and Pinkney were tried jointly on the charge of robbery with a dangerous weapon.
In his defense, defendant presented the testimony of Antonio Torrance, who was also present at the party on 23 June 2003 and testified that he had been hiding in the kitchen near White. According to Torrance, he did not see either Pinkney or defendant holding a gun or hear either of them demand that White empty his pockets. Torrance testified that he overheard the women in the apartment agreeing to call the police because they were angry at Pinkney and defendant.
The jury found defendant guilty of robbery with a firearm, but acquitted Pinkney. Immediately following the verdict, the trial judge inquired of defendant whether he wished to plead guilty or have a jury trial on the charge of possession of a firearm by a felon. Defendant told the trial judge that he felt that he had been "wrongfully guided" by his defense counsel. In response, the trial judge explained that the issue before the court at that time was whether defendant wanted a jury trial or to plead guilty. When the trial judge asked defendant whether he understood the charge against him, defendant complained about the "insufficient and inefficiency of [his] counsel." The trial judge reiterated that defendant's complaint was not relevant at that point.
Defendant then asked for another attorney to advise him on whether to plead guilty. The trial judge responded: "You have a very learned and experienced attorney who's done an outstanding job for you." Defendant stated that he believed that a "conflict of interest" existed if the same attorney who had represented him during the first phase of his trial, in which he was found guilty, continued to represent him in the second phase. When the trial judge declined to appoint substitute counsel "in the middle of a trial," defendant informed the judge that he had nothing further to say and a not-guilty plea was entered on his behalf.
During the trial of the possession of a firearm charge, the State presented evidence through an assistant clerk of court that defendant had been convicted of common law robbery, a felony, on 14 November 2002. When defense counsel called defendant to testify, defendant stated that he did not want to "testify further without adequate representation" and that he wanted to "express [his] Fifth Amendment right." Subsequently, when defense counsel waived his closing argument to the jury, defendant told him: "I don't want you as my attorney no more." The jury found defendant guilty of possession of a firearm by a felon.
The trial court sentenced defendant to a presumptive-range sentence of 108 to 139 months for the robbery with a dangerous weapon conviction and to a consecutive presumptive-range sentence of 14 to 17 months for the possession of a firearm by a felon conviction. Defendant timely appealed to this Court.

I
Defendant claims that he was provided ineffective assistance of counsel during the trial of the robbery charge when his trial counsel elicited on cross-examination of Nakesha Clark, one of the witnesses of the robbery, the following:
Q. You said something had happen[ed] the night before [the robbery]?
A. Um-hum.
Q. What was that?
A. I guess when they all went out to the club and they went to BP, and some stuff happened. I guess [defendant] put a gun to my aunt  or something like that  when she got in front of her son. I'm not sure. I wasn't there. I was at my aunt's house.
Defendant argues that because this testimony constitutes inadmissible hearsay, which could not have been admitted if offered by the State, defense counsel provided ineffective assistance of counsel.
To establish ineffective assistance of counsel, a defendant must meet both parts of a two-pronged test:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."
State v. Braswell, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985) (quoting Strickland v. Washington, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984)). Our Supreme Court elaborated further: "The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." Id. at 563, 324 S.E.2d at 248. As a result, "if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." Id., 324 S.E.2d at 249.
In this case, even assuming without deciding that trial counsel was unreasonable in cross-examining Clark, defendant has failed to demonstrate prejudice. While defendant focuses on the "highly damaging" and prejudicial nature of Clark's testimony, Clark indicated in her testimony that she did not really know what happened the day before: "I wasn't there. I was at my aunt's house." We cannot conclude that this testimony made a difference in the jury's verdict given the testimony of Joe White, who was actually present during the prior day's events and who, as the victim of the 23 June 2003 robbery, had no motivation to testify favorably towards defendant.
White testified that he was with his mother, Clark's aunt, at a gas station the day before the robbery. He stated that he gotinto an argument with Pinkney and that it was Pinkney  not defendant  who pulled out a gun. In light of this testimony, from someone who was actually involved in the altercation, explaining that defendant did not do anything, we conclude that it is unlikely that the testimony of Clark, who admitted not being present, would have affected the jury's verdict. Therefore, we hold that defendant is not entitled to relief based on his claim of ineffective assistance of counsel.

II
Defendant also argues that he was denied his Sixth Amendment right to counsel when the trial judge failed to make a sufficient inquiry into defendant's claim at trial that he was provided ineffective assistance of counsel during the robbery trial and needed substitute counsel for the possession of a firearm trial. In State v. Thacker, 301 N.C. 348, 271 S.E.2d 252 (1980), the Supreme Court addressed the trial court's duty to appoint substitute counsel upon a defendant's claim of ineffective assistance of counsel, explaining:
While it is a fundamental principle that an indigent defendant in a serious criminal prosecution must have counsel appointed to represent him, an indigent defendant does not have the right to have counsel of his choice appointed to represent him. This does not mean, however, that a defendant is never entitled to have new or substitute counsel appointed. A trial court is constitutionally required to appoint substitute counsel whenever representation by counsel originally appointed would amount to denial of defendant's right to effective assistance of counsel, that is, when the initial appointment has not afforded defendant his constitutional right to counsel.
Id. at 351-52, 271 S.E.2d at 255 (internal citations omitted).
The Court in Thacker defined a trial judge's duty to inquire into a defendant's representation as follows: "[W]hen faced with a claim of conflict and a request for appointment of substitute counsel, the trial court must satisfy itself only that present counsel is able to render competent assistance and that the nature or degree of the conflict is not such as to render that assistance ineffective." Id. at 353, 271 S.E.2d at 256. The Court explained that the trial judge is required to make the inquiry necessary to satisfy him or herself that "the original counsel is reasonably competent to present defendant's case and the nature of the conflict between defendant and counsel is not such as would render counsel incompetent or ineffective to represent that defendant[.]" Id. at 352, 271 S.E.2d at 255 (emphasis omitted).
In State v. Poole, 305 N.C. 308, 311-12, 289 S.E.2d 335, 338 (1982), the Supreme Court held that the trial court had conducted a sufficient inquiry into the defendant's complaint of ineffective assistance of counsel and request for substitute counsel despite the fact that the trial court did not "conduct [an] extensive inquiry and make findings of fact." The Supreme Court reasoned that the trial court did not need to inquire into defense counsel's legal experience or the amount of trial preparation because "[t]he very manner in which defense counsel handled [the pre-trial, trial, and post-trial proceedings] was sufficient to give the trial court sufficient indication of defense counsel's ability." Id. at 313, 289 S.E.2d at 339. In this case, defendant did not claim any actual conflict of interest between himself and his counsel. Instead, the question was the competency of counsel's assistance. As in Poole, however, because of the bifurcated nature of defendant's trial, the trial court had already had an opportunity to observe and assess defense counsel's competency and the effectiveness of the representation during defendant's trial for robbery with a firearm. Further, as the State observed in its brief: "[T]he trial for possession of a firearm by a felon is a simple affair requiring only two pieces of evidence: first that the defendant must have possessed a firearm and, second, he must be a convicted felon at the time." See N.C. Gen. Stat. § 14-415.1(a) (2007) ("It shall be unlawful for any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any firearm . . . ."). In light of the fact that defendant had just been convicted of robbery with a firearm, the only issue remaining for the second trial was whether defendant was a convicted felon at the time he committed the robbery. Defense counsel's role would be very limited under those circumstances.
Thus, the trial court was in a position to determine that defense counsel could provide competent representation in the second phase of the trial without making an extensive, detailed inquiry into defendant's complaint. As the Supreme Court stated in Thacker, 301 N.C. at 353, 271 S.E.2d at 256, "[w]hile some situations may indeed require an in-depth inquiry and detailed findings of fact, the conflict in the case sub judice is clearly not one of them." Accordingly, the trial court did not err in failing to make further inquiry regarding defendant's request for substitute counsel.
No error.
Judges BRYANT and STEELMAN concur.
Report per Rule 30(e).