STATE OF NORTH CAROLINA
v.
JAMES DAVID SIZEMORE.
No. COA07-1489
Court of Appeals of North Carolina
Filed August 5, 2008
This case not for publication
Attorney General Roy A. Cooper, III, by Special Deputy Attorney General John J. Aldridge, III, for the State.
Devereux & Banzhoff, PLLC, by Andrew B. Banzhoff, for defendant-appellant.
HUNTER, Judge.
James David Sizemore ("defendant") appeals from judgments entered 23 March 2007 pursuant to jury verdicts of guilty on one count of first degree arson and two counts of insurance fraud. After careful consideration, we find no error.

I.
Defendant began leasing a furnished apartment at the Heritage Inn in Franklin, North Carolina, on 23 November 2004. On 29 March 2005 at approximately 10:30 p.m., a neighbor witnessed defendant repainting the parking lines in front of his apartment. Defendant testified that he then departed with his brother at 11:00 p.m. and spent the night at his brother's house after installing a waterheater, though telephone records introduced at trial indicated that defendant placed a telephone call from his cell phone to the residential line of his brother's house at 4:45 a.m. At 4:54 a.m., a tenant who occupied the apartment above defendant's reported a fire in defendant's apartment to authorities.
Sally Wade, landlord of the apartment complex, was notified of the fire by a tenant at 5:15 a.m. and drove to the complex immediately. She testified that, once there, she noticed defendant's car in the parking lot and became concerned that he might still be inside the apartment. She first called defendant's brother, and after speaking to him, called defendant's cell phone but got no answer. Ms. Wade then called defendant's brother again to confirm defendant's cell phone number, and defendant came on the line. At that point, Ms. Wade told defendant about the fire in his apartment. Ms. Wade testified that this phone call took place around 6:00 a.m.; defendant told investigators it took place around 7:00 a.m.
After surveying the damage, defendant filed a notice of loss accompanied with an inventory of items destroyed by the fire with Farmers Insurance Company.
Arriving at the scene of the fire at approximately 9:30 a.m. on 30 March 2005, Agent Matthew Bivens of the North Carolina State Bureau of Investigation ("SBI") was assigned to initiate an investigation into the cause and origin of the fire. After a thorough investigation, Agent Bivens determined the fire in defendant's apartment originated near the closet in the front of the living room and that it was set by human hands. He further concluded, given the position of a plastic gas can in the center of the room, that the accelerant was ignited by someone throwing something through a window in the living room.
Spearheading the investigation for the SBI, Special Agent Allen Flora interviewed defendant on 30 March 2005. Defendant informed Special Agent Flora that the contents of the charred apartment included cookware, a used sofa, a new chair, a new dining room suite, and a large mirror. He estimated the aggregate loss to be around $20,000.00. Special Agent Flora, however, found no evidence at the fire scene of the dining room table and accompanying chairs defendant claimed had been destroyed in the fire. Accordingly, Special Agent Flora examined the inventory list defendant gave the insurance company and determined that none of the listed items had been in the fire.
Executing a search warrant on defendant's office to look for the items defendant claimed had been destroyed by the fire, Special Agent Flora found a dining room suite and a laptop computer matching the description of the supposedly destroyed items. He also found a leaf blower, a vacuum cleaner and a number of other items from the inventory list of things defendant claimed to have been destroyed. Wishing to speak with defendant, Special Agent Flora pursued defendant to his sister's home where he found defendant "cowering" in the back bedroom. Defendant was indicted for first degree arson and two counts of insurance fraud on 9 January 2006.

II.
Defendant first argues that the trial court's denial of his counsel's motions to continue and to withdraw violated defendant's Sixth Amendment right to have counsel of his choosing. This argument is without merit.
At a hearing on 19 March 2007, the trial court considered both motions. As to the motion to continue, defense counsel stated that the case was originally scheduled to start in the January term of 2007, was moved to the 2 April 2007 session, and finally was moved to start on 19 March 2007. Notice of the move was made public in February 2007. At that point, defense counsel attempted to contact defendant but was unable to do so; he left defendant a message, which defendant returned three days before the hearing, saying he had been out of town. As to the motion to withdraw, defense counsel, who had been appointed to represent defendant, stated that defendant had told him he wanted to hire private counsel; however, he had not done so at the time of this hearing. The trial court denied both motions.
Defendant correctly states that, because the motion was based on a question of his constitutional right to counsel, we review it de novo. State v. Poole, 305 N.C. 308, 318, 289 S.E.2d 335, 341-42 (1982). Poole concerns a very similar situation: Defendant was denied a continuance that he had requested to retain private counsel, and he appealed on the basis of his constitutional right to counsel. Poole, 305 N.C. at 318, 289 S.E.2d at 342. The Court reasoned: A defendant's right to select his own counsel cannot be insisted upon in a manner that will obstruct an orderly procedure in courts of justice, and deprive such courts of the exercise of their inherent powers to control the same. It is implicit in the constitutional guarantees of assistance of counsel and confrontation of one's accusors [sic] and witnesses against him that an accused and his counsel shall have reasonable time to investigate, prepare and present his defense. However, no set length of time is guaranteed and whether defendant is denied due process must be determined under the circumstances of each case.
Id. (citations omitted). As the trial court noted in its ruling on the motion to continue, the case was at the time of the hearing two years old, the current defense counsel had been on the case for almost a year and had been involved in discovery on the case, defense counsel had notice in February 2007 of the date of the trial, defendant had waited two years into the trial process to mention hiring private counsel, and defendant had not actually hired private counsel as of the hearing. The Court in Poole cited with approval the following extract from a 7th Circuit case:
"[T]he trial court was justified in denying the motion to withdraw when defendant was not prepared to substitute new counsel, and further, that it was proper for the trial judge to contest the bona fides of defendant's last-minute request for a delay in the trial by requiring him to retain new counsel on the same day. . . . On the record before us, however, . . . the trial court was justified in ruling that the prompt administration of justice outweighed defendant's meager showing of necessity for substitution of a hypothetical new attorney. On appeal, defendant has again been represented by court-appointed counsel. He has failed to put forward any indicia of prejudice because of his appointed representation. Therefore, we feel no justifiable basis exists for asubstitution of his attorney on the day of his trial. Without any such justifiable basis, there is no constitutional right under the Sixth Amendment to a continuance to enable defendant to seek new counsel on the day of the trial."
Poole, 305 N.C. at 319, 289 S.E.2d at 342 (citation omitted; alteration in original). The same reasoning applies to the case at hand. As such, defendant's argument is without merit.

III.
Defendant next argues that the trial court erred in not sanctioning the State for failing to turn over certain pieces of evidence in a timely fashion. This argument is without merit.
The evening before the trial began, the prosecuting attorney was preparing for testimony with the SBI agent and the Franklin Police Department ("FPD") officer, Sergeant Chastain, who investigated the case. As the three went over the files together, they discovered twenty-six pages ("the new pages") of materials were in the FPD file but not in the SBI file. Only the SBI file had been turned over to defendant because it was believed that the two files were identical. Upon discovering these twenty-six new pages, the prosecuting attorney immediately contacted defendant's attorney and turned the materials over to him around 7:00 p.m. that evening. The trial began the next day.
The new pages contained the following: (1) notes of interviews of witnesses made immediately after the fire by FPD officer Lieutenant Bates, (2) notes from investigative work done by Sally Wade, owner of the apartment building, and (3) materials relating to an investigation of a 2004 fire at defendant's residence, for which he filed a claim, conducted by a private investigator, Scott Bartucca, who had been hired by the insurance company.
As to the notes by Lieutenant Bates and Ms. Wade, the prosecuting attorney stated that the substance of the notes, but not the original notes themselves, were in the SBI report turned over to defendant. As the prosecuting attorney noted at the time, the new pages of original material "d[id] not contain evidence the State would anticipate offering[,]" though Lieutenant Bates's notes contained information the State might introduce.
Defendant's attorney argued to the trial court that the new pages revealed the names of three new witnesses he had not before known of and now wanted to call. The first of these was Bartucca, the private investigator who had investigated the 2004 fire; defendant's attorney claimed that the investigator's conclusion was that the fire was probably set by someone with whom defendant had had a romantic relationship. The other two potential witnesses were individuals, only one of whose name was given at the hearing, whom Ms. Wade apparently suspected of being involved in the fire. When the trial court asked defendant's attorney "have you got some witnesses you need to get that you weren't aware of beforehand?," defendant stated that he had issued a subpoena for Bartucca. Shortly thereafter, however, defendant's attorney stated he had issued "several subpoenas," not specifying the persons whom they named. Defendant makes two arguments to this Court that the State's failure to turn over the new pages until the evening before trial merits a new trial. We find both to be without merit.

A.
Defendant first argues that the State violated his right to exculpatory information under Brady v. Maryland, 373 U.S. 83, 10 L. Ed. 2d 215 (1963), by failing to disclose the new pages until the night before trial.
As our Supreme Court has articulated:
In Brady, the United States Supreme Court held that the prosecution may not suppress favorable evidence which is material to the guilt or punishment of a defendant without violating due process. Evidence is considered material only if there is a "reasonable probability" of a different result had the evidence been disclosed to the defense.
State v. Call, 349 N.C. 382, 399, 508 S.E.2d 496, 507 (1998) (citation omitted), cert. denied, 534 U.S. 1046, 151 L. Ed. 2d 548 (2001). The Supreme Court expanded on this definition of "material" evidence: "`[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.'" State v. Howard, 334 N.C. 602, 605, 433 S.E.2d 742, 744 (1993) (quoting United States v. Agurs, 427 U.S. 97, 112, 49 L. Ed. 2d 342, 355 (1976)).
Our Supreme Court has adopted this reasoning, noting that not all failures to disclose evidence constitute "automatic" reversible error; rather, "prejudicial error must be determined by examining the materiality of the evidence." Howard, 334 N.C. at 605, 433 S.E.2d at 744. Futher, even where evidence is material, "`due process and Brady are satisfied by the disclosure of the evidence at trial, so long as disclosure is made in time for the defendants to make effective use of the evidence.'" State v. Small, 131 N.C. App. 488, 490, 508 S.E.2d 799, 801 (1998) (quoting State v. Taylor, 344 N.C. 31, 50, 473 S.E.2d 596, 607 (1996)); see also State v. Berry, 356 N.C. 490, 517, 573 S.E.2d 132, 149 (2002) ("a Brady violation may not constitute error if the favorable evidence is provided in time for the defendant to make effective use of it").
The question before us, then, is whether the new pages were material  that is, whether a reasonable possibility exists that defendant would not have been found guilty had it been disclosed earlier  and, if so, whether they were disclosed in time for defendant to make use of them. Because we hold that the new pages were not material, we do not address the issue of timeliness.
The new pages, as mentioned above, contained: Notes of initial witness interviews by an FPD officer, notes from unofficial investigative work done by Ms. Wade, and materials relating to an investigation of a previous fire (in 2004) at defendant's residence conducted by a private investigator. The bulk of the substantive information contained in the first two items was, as the State informed the trial court, available elsewhere in the discovery materials; the materials from the private investigator dealt with a 2004 fire, not the 30 March 2005 fire for which defendant was charged.
Defendant argues that these new pages reveal new suspects and witnesses, and the failure to disclose them prevented him from a dequately preparing for trial. We find this argument unconvincing for two reasons: First, it appears to this Court that the new pages reveal only, in the case of the notes, an expanded version of material already in defendant's possession and, in the case of the private investigator's material, information unrelated to the crime with which defendant was charged. Second, our Supreme Court has explicitly stated that "the focus should not be on the impact of the undisclosed evidence on the defendant's ability to prepare for trial, but rather should be on the effect of the nondisclosure on the outcome of the trial." State v. Alston, 307 N.C. 321, 337, 298 S.E.2d 631, 642 (1983).
Because defendant has failed to establish a reasonable probability of a different result had the evidence been disclosed earlier, we find that the evidence was not material.[1]

B.
Defendant's second argument regarding the disclosure of the new pages is that the trial court abused its discretion by declining to sanction the State for failure to comply with statutory discovery procedures. We disagree.
Per N.C. Gen. Stat. § 15A-903(a)(1) (2007), the State must "[m]ake available to the defendant the complete files of all law enforcement and prosecutorial agencies involved in the investigation of the crimes committed or the prosecution of the defendant." The purpose of this statute is "to protect the defendant from unfair surprise by the introduction of evidence he cannot anticipate." State v. Payne, 327 N.C. 194, 202, 394 S.E.2d 158, 162 (1990).
It is well established that "[t]he determination as to whether the [S]tate substantially failed to comply with discovery is within the trial judge's discretion." State v. McClintick, 315 N.C. 649, 661-62, 340 S.E.2d 41, 49 (1986). When a trial court determines that the State has failed to comply with statutory discovery procedures, the available sanctions include: Prohibiting the State from entering evidence not disclosed, granting a continuance or a recess, or declaring a mistrial. N.C. Gen. Stat. § 15A-910(a) (2007). "The decision as to which sanctions to apply, or whether to apply any of the sanctions at all, however, rests with the discretion of the trial court."State v. Carson, 320 N.C. 328, 336, 357 S.E.2d 662, 667 (1987). We will therefore reverse the trial court's determination on such sanction only where its decision not to impose sanctions "was so arbitrary that it could not have been the result of a reasoned decision." Id. Further, "discretionary rulings of the trial court will not be disturbed on the issue of failure to make discovery absent a showing of bad faith by the [S]tate in its noncompliance with the discovery requirements." McClintick, 315 N.C. at 662, 340 S.E.2d at 49. On the day of trial, before the jury was brought into the courtroom, the trial court elicited the following facts from the parties: The State's attorney had no knowledge of the discrepancy between the FPD and SBI files until the night before trial as "[t]he SBI was the primary investigating agency in this matter" and the SBI's investigative file became the State's prosecution summary. Upon realizing the mistake, "the district attorney immediately notified defense counsel and then provided counsel with the documents" prior to the start of trial. The record reveals no evidence of bad faith on the part of the State in not disclosing the missing pages earlier.
Acknowledging that defendant was entitled to the materials and acting within its discretion, the trial court declined to grant a mistrial but offered to subpoena any witnesses defendant desired to testify at trial. We find no abuse of discretion in these actions.
Although defendant was entitled to the new pages, they did not contain evidence the State anticipated offering and thus could not be used to unfairly surprise defendant at trial. Further, the substance of most of the materials was properly made available to defendant at the onset of the case and the State delivered the missing materials to defendant immediately after the mistake was realized. Our Supreme Court has previously held that when the late disclosure of evidence "in all probability had little impact on the State's case against [defendant,] . . . we are unable to say that the trial court's decision not to apply sanctions against the State could not have been the result of a reasoned decision." Carson, 320 N.C. at 337, 357 S.E.2d at 668. The same is true in the case at hand.
Accordingly, we conclude that the trial court's decision not to sanction the State was the result of a reasoned decision and was within the trial court's discretion. As such, we find no error.

IV.
Defendant next argues that the trial court erred in allowing testimony regarding the contents of a report concerning scientific evidence from a State Bureau of Investigation agent different from the one who conducted the tests and compiled the report. This argument is without merit.
Defendant argues that the admission of this evidence violates the mandate of Crawford v. Washington, 541 U.S. 36, 158 L. Ed. 2d 177 (2004), prohibiting the admission of certain testimonial statements. However, as the State correctly notes, precisely this type of statement was held not to be testimonial in our Supreme Court's opinion in State v. Forte, 360 N.C. 427, 629 S.E.2d 137, cert. denied, ___ U.S. ___, 166 L. Ed. 2d 413 (2006). There, the agent who prepared the report was no longer in the employ of the agency, and thus did not testify; instead, the employee's former supervisor testified as to the report's contents. Id. at 434, 629 S.E.2d at 142. The Court held the report admissible as a business record under North Carolina Rule of Civil Procedure 803(6). N.C. Gen. Stat. § 8C-1, Rule 803(6) (2007). Id. at 436, 629 S.E.2d at 144. In this case, the agent who prepared the report was in fact deceased at the time of trial. The agent who testified as to the report testified that the deceased agent had created the report as part of his regular duties with the agency and in the ordinary course of agency business. See N.C. Gen. Stat. § 8C-1, Rule 803(6).[2] As such, the trial court did not err in allowing the testimony to be presented.

V.
Finally, defendant argues that the trial court erred in denying his motion to dismiss the charges against him at the close of all the evidence because the State had presented insufficient evidence to support the verdicts of guilty. This argument is without merit.
To survive a motion to dismiss, the State must have presented substantial evidence to prove each element of the crime charged.
In considering a motion to dismiss, the evidence must be considered in the light most favorable to the State, and the State is entitled to every reasonable inference to be drawn therefrom. The test of whether the evidence is sufficient to withstand a motion to dismiss is whether a reasonable inference of defendant's guilt may be drawn therefrom, and the test is the same whether the evidence is direct or circumstantial.
State v. Gainey, 343 N.C. 79, 85, 468 S.E.2d 227, 231 (1996) (citation omitted). When a trial court "consider[s] a motion to dismiss, `[i]f the trial court determines that a reasonable inference of the defendant's guilt may be drawn from the evidence, it must deny the defendant's motion and send the case to the jury even though the evidence may also support reasonable inferences of the defendant's innocence.'" State v. Alexander, 337 N.C. 182, 187, 446 S.E.2d 83, 86 (1994) (quoting State v. Smith, 40 N.C. App. 72, 79, 252 S.E.2d 535, 540 (1979); alteration in original; emphasis omitted).
As to the charge of first degree arson, defendant argues that the State did not present sufficient evidence that defendant was the perpetrator of the arson. However, the State presented evidence that: Defendant was in the parking lot in front of the apartment at 10:30 p.m. the night the fire started; defendant gave contradicting statements to the agents as to various details, including whether he had extra clothes at his brother's house; defendant placed a phone call to his brother just before the fire was reported despite telling investigators he was with his brother at the time; and defendant's apartment was locked from the inside, and agents testified that no one standing outside the apartment could have spread the accelerants around the apartment.
As to the charges of insurance fraud, defendant argues that the State's only evidence was a list of property lost in the fire compiled by defendant and submitted to his insurance company. Defendant insists this list was simply an impromptu listing of all his property which he was told by a person from the insurance company would be used to make a more specific list at a later date. Both the insurance company and the State believed the list to be aninventory of items lost in the fire in support of his casualty claim to his insurance company. The list contained a number of pieces of property that testimony from Special Agent Flora revealed were later located in defendant's office.
Taking this evidence in the light most favorable to the State, as we must, there existed substantial evidence of each element of these offenses for them to be submitted to the jury. As such, the trial court did not err on this point.

VI.
Because defendant has not shown prejudicial error resulted from any of the disputed actions by the trial court, we find no error.
No error.
Judges STEELMAN and STEPHENS concur.
Report per Rule 30(e).
NOTES
[1] We note that even were we to find that the new pages were material, we would not resolve the second question  the timeliness of disclosure  in defendant's favor: At trial, defendant called both Bartucca and Lieutenant Bates as witnesses, questioning them extensively, and on cross-examination, defendant exhaustively examined Ms. Wade as to her private investigation into the fire. Accordingly, defendant has failed to show that he was prejudiced by the late disclosure of the materials.
[2] We note also that the reports were, in a sense, neutral, given that their results could have helped or harmed defendant depending on the outcome.