IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA22-1002

Filed 17 October 2023

Durham County, No. 17 JT 104

IN THE MATTER OF: E.D.-A.

Appeal by Mother from orders entered 29 August 2022 by Judge Doretta L. Walker in Durham County District Court. Heard in the Court of Appeals 21 July 2023.

*Lauren Vaughan for petitioner-appellee Durham County Department of Social Services.*

*Miller & Audino, LLP, by Jeffrey L. Miller, for respondent-appellant mother.*

*Battle, Winslow, Scott & Wiley, P.A., by M. Greg Crumpler, for guardian ad litem.*

MURPHY, Judge.

On appeal from a motion for recusal, we review de novo whether the movant presented substantial evidence of the trial court's bias or prejudice such that a reasonable person would doubt the trial judge's ability to rule impartially in the matter. Such evidence must indicate the trial judge harbors a personal bias against the party itself, rather than merely about the subject matter of the case. Where the movant's allegations of bias contain sufficient force to require the trial court to make findings of fact as to its own impartiality, the trial judge should refer the recusal

motion for consideration by another judge. However, failure to refer a motion for recusal does not constitute reversible error when we conclude on de novo review that the movant did not meet its burden to demonstrate prejudice. Mother failed to present substantial evidence of the trial judge's bias against her, and therefore, the trial court did not err by making findings of fact about its own ability to rule impartially in Mother's termination of parental rights hearing and denying Mother's motion for recusal.

As to the merits of the termination order, to demonstrate grounds for termination under N.C.G.S. § 7B-1111(a)(8), DSS must show that the parent has committed one of the statutorily proscribed offenses against one of the statutorily proscribed individuals. Mother contends that the meaning of "residing in the home" is ambiguous, and to provide due process, we must interpret it to require that Mother, her victim Wendy, and her daughter Opal subject to this matter resided in the same home on the date of the offense.[1] Mother argues that Wendy was not "residing in the home" at the same time as Opal, because Opal was *in utero* on the date of Mother's commission of felony child abuse of Wendy. However, as life begins at conception, we affirm the termination of Mother's parental rights under N.C.G.S § 7B-1111(a)(8).

## BACKGROUND

---

[1] We use pseudonyms to protect the juveniles' identity and for ease of reading.

Mother appeals an order terminating her parental rights to her minor child Opal. Mother and Father lived together for three years with their minor child Roxanne, Mother's minor child Luis, and Father's minor child Wendy, though they never married; Father never established paternity; and Father was not listed on Opal's birth certificate. Mother described in therapy that Father had an extensive history of inflicting bruises, stab wounds, and miscarriages on her and of engaging in psychological and emotional abuse of her, Wendy, and Luis. DSS opened juvenile cases for each of Mother's children after an incident which occurred on 3 December 2016, resulting in severe injuries to Opal's half-sister Wendy. On 14 February 2017, Mother was charged in connection with these events with negligent child abuse causing serious bodily injury, a Class E felony, in violation of N.C.G.S. § 14-318.4(a4). Father was also charged in relation to Wendy's injuries and remained incarcerated pending charges for child abuse and domestic violence. On 3 April 2017, a grand jury indicted Mother for negligent child abuse causing serious bodily injury, a Class E felony, in violation of N.C.G.S. § 14-318.4(a4) and felony child abuse intentionally inflicting serious bodily injury, a Class B2 felony, in violation of N.C.G.S. § 14-318.4(a3).

On 18 April 2017, Opal's siblings Luis and Roxanne were adjudicated dependent, removed from Mother's home, and placed with their maternal grandmother ("Grandmother"). On 8 May 2017, Opal was born to Mother. On or about 10 May 2017, Mother and Grandmother arranged for Father's bail. Upon his

release, Father was taken into custody by the U.S. Immigration and Customs Enforcement ("ICE"). After being taken into custody by ICE, it is believed that Father was deported. DSS was unable to make contact with Father regarding appropriate placement of the children.

On 11 May 2017, three days after Opal's birth, DSS filed Opal's juvenile dependency and neglect petition and removed Opal from Mother's custody. On 23 May 2017, the trial court entered an order reflecting its placement of Opal with DSS. As of 20 July 2017, Opal's sibling Roxanne and half-siblings Wendy and Luis all had pending abuse/neglect/dependency cases.

On 20 July 2017, Opal was adjudicated neglected and dependent. Mother had supervised weekly visitation with Opal, as well as her other children. DSS established a case plan for Mother to be reunited with Opal while Opal remained in the custody of DSS. During this time, Mother visited all of her children regularly and appropriately, maintained employment and stable housing, and paid child support for Opal. At this point in time, the trial court established a primary permanent plan for Opal of reunification with Mother with a secondary plan of guardianship.

On 27 June 2018, Mother pled guilty to negligent child abuse causing serious bodily injury, a Class E felony, in violation of N.C.G.S. § 14-318.4(a4) and felony child abuse causing serious bodily injury, a Class D felony, in violation of N.C.G.S. § 14-318.4(a) regarding the physical injuries caused to Wendy in December 2016. Mother received a concurrent active sentence of 51 to 74 months. During her incarceration,

Mother's visitation rights with all of her children were suspended. Grandmother continued to have supervised visits with Opal, and Grandmother retained custody of Luis and Roxanne. On 10 July 2018, the trial court ordered that the primary permanent plan for Opal should no longer be reunification.

On 7 January 2019, the trial court held a permanency planning hearing during which it determined that Opal's new primary plan would be guardianship, with a secondary plan of adoption. Pursuant to its 21 February 2019 permanency planning order, the trial court allowed Grandmother, who continued to have custody of Luis and Roxanne, to have visits with Opal in her home. DSS recommended Opal's placement be changed from foster parents to Grandmother or another relative, though the guardian ad litem ("GAL") disagreed. The trial court made no changes to custody rights at that time.

The trial court continued to conduct permanency planning hearings. After the 20 October 2020 permanency hearing, the trial court noted DSS and the GAL's recommendation that legal guardianship of Luis and Roxanne remain with their Grandmother. The trial court denied reinstatement of Mother's visitation rights with all of her children, but in November 2020, it awarded permanent guardianship of Luis and Roxanne to Grandmother after finding that she had provided a safe and stable home for over a year.

The trial court maintained Opal's primary plan of guardianship at subsequent permanency planning hearings until 20 April 2021, when it changed her primary plan

to adoption with a secondary plan for guardianship. During this same hearing, the trial court directed DSS to file a petition to terminate Mother's parental rights to Opal. On 19 October 2021, the trial court held a review of the permanent plan and found that DSS had not made reasonable efforts to implement it. On 21 October 2021, DSS filed its *Petition and Motion for Termination of Parental Rights* ("TPR").

Prior to the TPR hearing on 17 June 2022, Mother filed a motion for recusal of the trial judge, alleging the judge was biased against Mother and could not provide a fair hearing. The trial court denied Mother's motion for recusal based on its findings of fact that it would be fair and impartial in the matter, and the trial judge presided over Mother's TPR hearing. During the hearing, the trial court found that Mother had willfully failed to pay child support for the six continuous months immediately preceding the 21 October 2021 filing of the petition, despite being employed during four of those months. Mother testified she attempted to pay child support during these months by contacting Child Support Enforcement but received no further instructions on how to pay.[2] The trial court ultimately found the facts were sufficient to terminate Mother's parental rights as to Opal because "[t]he court may terminate the parental rights upon a finding . . . [that] the parent has for a continuous period of six months immediately preceding the filing of the petition or motion willfully failed

---

[2] The trial court made no findings of fact about Mother's efforts to pay. The trial court only made a finding of fact that Mother failed to pay child support for six months "despite having the means to do so."

- 6 -

to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so." N.C.G.S. § 7B-1111(a)(3) (2022). The trial court also found that the facts regarding Mother's guilty plea to felony child abuse in violation of N.C.G.S. § 14-318.4 was sufficient to terminate Mother's parental rights under N.C.G.S. § 7B-1111(a)(8), which states, "The court may terminate the parental rights upon finding . . . [t]he parent . . . has committed a felony assault that results in serious bodily injury to the child, another child of the parent, or other child residing in the home[.]" N.C.G.S. § 7B-1111(a)(8) (2022).

Based on the trial court's conclusion that the evidence provided at trial was sufficient to establish grounds to terminate under N.C.G.S. §§ 7B-1111(a)(3) and (a)(8), the trial court terminated Mother's parental rights and left Opal in the custody of her foster parents with the possibility of adoption.

## ANALYSIS

Mother argues two issues on appeal: (A) the trial court erred when it declined to assign Mother's motion for recusal to another judge, made findings of fact as to its own impartiality, and denied Mother's motion for recusal and (B) the trial court erred by terminating Mother's parental rights under N.C.G.S. § 7B-1111(a)(3) because Mother's failure to pay was not willful and under N.C.G.S. § 7B-1111(a)(8) because Wendy, the child for whom Mother pled guilty to felony child abuse, was not another child residing in the home with Opal.

### A. Motion for Recusal

We review a trial court's ruling on a judicial recusal motion de novo. *Dalenko v. Peden Gen. Contractors, Inc.*, 197 N.C. App. 115, 123 (2009), *disc. rev. denied*, 363 N.C. 854 (2010). Under de novo review, we "freely substitute[] [our] own judgment" for that of the lower court. *State v. Williams*, 362 N.C. 628, 632 (2008).

Under Canon 3(C) of the North Carolina Code of Judicial Conduct, a judge should recuse herself from "a proceeding in which the judge's impartiality may *reasonably be questioned*[]" for a number of reasons, including but not limited to her "personal bias or prejudice concerning a party." Code Jud. Conduct, Canon 3(C)(1)(a) (2015) (emphasis added). Our task on appeal is not to determine whether the trial court's decisions throughout the proceedings leading up to the TPR hearing were appropriate, but whether, in light of her previous involvement with this case, "the circumstances are such that a reasonable person would question whether the judge could rule impartially" in Mother's termination of parental rights hearing. *Harrington v. Wall*, 212 N.C. App. 25, 34 (2011). Mother argues that, in light of four alleged instances of bias, a reasonable person would have doubts about the trial judge's ability to rule fairly in the case, and the trial judge should have recused herself from ruling on Mother's motion for recusal and from presiding over Mother's TPR hearing.

When a party moves for recusal, "the burden is upon the party moving for disqualification to demonstrate objectively that grounds for disqualification actually exist." *State v. Richardson*, ___ N.C ___, ___, 891 S.E.2d 132, 158 (2023) (quoting

*State v. Fie,* 320 N.C. 626, 627 (1987)).  To demonstrate such grounds for disqualification, the party moving for recusal must present "substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that [s]he would be unable to rule impartially."  *Fie*, 320 N.C. at 627; *accord Love v. Pressley*, 34 N.C. App. 503, 506 (1977), *disc. rev. denied*, 294 N.C. 441 (1978).  "[M]ere speculation or conjecture is not sufficient to satisfy this requirement."  *Richardson*, ___ N.C. at ___ (quoting *State v. Polke*, 361 N.C. 65, 72 (2006)).  "The bias, prejudice, or interest which requires a trial judge to be recused from a trial has reference to the personal disposition or mental attitude of the trial judge, either favorable or unfavorable, toward a party to the action before [her]."  *State v. Kennedy*, 110 N.C. App. 302, 305 (1993) (marks omitted).  "If the allegations about the judge's potential disqualification are made with 'sufficient force' to require findings of fact, the motion to recuse should be referred to another judge."  *Richardson*, ___ N.C. at ___ (citing *Scott*, 343 N.C. at 326); *see also N.C. Nat'l Bank v. Gillespie*, 291 N.C. 303, 311 (1976) ("[W]hen the trial judge found sufficient force in the allegations contained in [the] defendant's motion to proceed to find facts, he should have either disqualified himself or referred the matter to another judge before whom he could have filed affidavits in reply or sought permission to give oral testimony.  Obviously[,] it was not proper for th[e] trial judge to find facts so as to rule on his own qualification to preside when the record contained no evidence to support his findings.").

Mother contends that the trial judge should have recused herself from the termination of parental rights hearing under Canon 3(C) because she was biased against Mother. Mother's motion alleged four instances in previous proceedings regarding Opal where the trial court showed this bias: (1) when it placed Opal with a nonrelative, despite the existence of willing and able relatives; (2) when it denied Mother's requests for visitation and contact with Opal; (3) when it referred to Mother's conduct underlying her felony child abuse conviction as to Wendy as "torture;" and (4) when it directed DSS to file a petition to terminate Mother's parental rights against DSS's own recommendations. Mother also asserts that the trial judge committed prejudicial error when she made findings of fact as to the appropriateness of her own recusal, rather than referring the motion for recusal to another judge for consideration.

Mother's first two contentions constitute an ineffective attempt to collaterally attack the merits of the trial court's previous rulings as to Opal's placement and Mother's visitation rights. Mother has only preserved and appealed the trial court's denial of her motion to recuse and the trial court's order terminating her parental rights as to Opal. Accordingly, we do not review whether the trial court erred in its decisions leading up to Mother's motion for recusal. We review only whether, in light of the trial judge's previous conduct and involvement with the case, along with any other relevant circumstances, the trial judge erred by denying Mother's motion for recusal.

In her brief, Mother raises the same argument as in her motion for recusal: that the trial judge's previous actions and involvement in Opal's case, including its placement of Opal with non-relatives and its revocation of Mother's visitation rights, created circumstances such that a reasonable person would believe that the judge had formed an opinion against her, and consequently, the trial judge should have recused herself. We have previously held "that the fact that a trial judge has repeatedly ruled against a party is not grounds for disqualification of that judge absent substantial evidence to support allegations of interest or prejudice." *Love*, 34 N.C. App. at 506 (citing *In re Custody of Cox*, 24 N.C. App. 99, 101 (1974)). Furthermore, "it is the practice in North Carolina for one judge to preside over a juvenile case throughout the life of the case. This is known as the 'one judge, one family' policy." *Matter of J.A.M.*, 375 N.C. 325, 332 (2020). In *In re Faircloth*, we held that the respondent's "claim of bias and prejudice [] based on [the trial judge] having presided over the earlier abuse and neglect hearing" was insufficient to require the trial judge's disqualification. *In re Faircloth*, 153 N.C. App. 565, 570-71 (2002), *declined to follow on other grounds*, *In re S.R.*, 384 N.C. 516, 522 (2023).[3] The trial judge's continued oversight of Opal's case is insufficient to raise doubts in a reasonable person's mind as to the trial judge's ability to rule impartially in Opal's

---

[3] In *In re S.R.*, our Supreme Court declined to follow *In re Faircloth*'s holding that "by failing to deny . . . certain allegations contained in the petition, [the respondent], in fact, admitted those allegations." *In re S.R.*, 384 N.C. 516, 522 (2023) (alteration in original).

termination of parental rights hearing, as the trial judge merely complied with the common practice in juvenile cases. *Id.* ("Furthermore, we reject any contention that [the trial judge] should be disqualified because he earlier adjudicated the [respondent's] four children abused and neglected.").

Mother next alleges that the trial judge's direction that DSS file a petition to terminate her parental rights may raise doubts in the mind of a reasonable person as to the trial judge's impartiality. In support of this contention, Mother cites *State v. Fie*, a case in which the trial judge's "initiat[ion] [of] the criminal process against the two defendants" could have caused a reasonable person to believe the judge "thought the defendants were guilty." *Fie*, 320 N.C. at 628. Our Supreme Court found that this was sufficient to require the judge to recuse himself. *Id.* However, unlike in criminal proceedings, a trial court's direction that DSS file a TPR is contemplated by our statutes when "the court finds that a proceeding to terminate the parental rights of the juvenile's parents is necessary in order to perfect the primary permanent plan for the juvenile[.]" N.C.G.S. § 7B-906.1(m) (2022). The trial court ordered DSS to file a TPR petition on the same day it changed Opal's primary permanent plan from guardianship to adoption. The trial court acted pursuant to its statutory authority when it ordered DSS to file a TPR petition to perfect Opal's primary plan of adoption. Furthermore, "the trial court is required at a review hearing to evaluate when and if termination of parental rights should be considered." *In re LaRue*, 113 N.C. App. 807, 810 (1994) (alteration in original) (marks omitted). In *In re LaRue*, we rejected the

parent's argument that the trial judge should have recused himself from the termination of parental rights hearing because of his recommendation "that DSS pursue a termination of parental rights proceeding against [the respondent]." *Id.* The trial court's directive to file a petition for the termination of Mother's parental rights to Opal is insufficient to raise doubts in a reasonable person's mind as to the trial judge's impartiality.

Mother also argues that a reasonable person would question whether the trial judge could rule impartially in Mother's termination hearing based on the trial court's reference to Father and Mother's treatment of Wendy as "torture" in its permanency planning orders. Specifically, the trial court found "[i]t is not possible for the children [to] be returned home within the next six months as [] Mother is currently incarcerated for a minimum of 51 months in relation to the abuse of [Wendy]. [Mother] entered a plea of guilty, which removes any uncertainty as to Mother's complicity in the torture of [Wendy]." Mother argues that "[t]he use of the emotional, non-legal term 'torture' is some evidence of the [trial] court's personal feeling toward Mother that affected its decisions and caused a perception of bias." Mother contends that referring to her conduct underlying her conviction for abuse of Wendy as "torture" is "emotional[] and irrational[]." We disagree.

In *State v. Kennedy*, on review of the trial court's denial of a defendant's motion for recusal, we held:

> Bias or prejudice does not refer to any views a judge may entertain toward the subject involved in the case. Accordingly, a trial judge's personal views on the particular crime for which a defendant is charged do not, without more, show that he is prejudiced or biased or give rise to a reasonable belief that the trial court could not rule impartially. Nor does the fact that a judge, for whatever personal reasons, views a particular type of crime as more serious or more deserving of punishment than other crimes give a reasonable person grounds to question whether the trial court can rule impartially.
>
> The defendant's motion and its supporting affidavit do not allege that the trial judge has any strong feelings about defendant herself. Rather, they suggest that the trial judge, for personal reasons, has strong feelings about the crime of driving while impaired. Such feelings, assuming *arguendo* that they do exist, are directed to the subject matter of the case and not to defendant herself. As such, they are not indicative of any bias against defendant, nor are they sufficient to give a reasonable person grounds to believe that the judge could not act impartially in the matter. Therefore, there was no error in the trial judge's failure to recuse himself.

*Kennedy*, 110 N.C. App. at 305-06 (marks and citation omitted). Freely substituting our own judgment for that of the trial court, Mother failed to meet her burden of presenting "substantial evidence that there exists such a personal bias, prejudice or interest on the part of the judge that [s]he would be unable to rule impartially." *Fie*, 320 N.C. at 627. The trial court's choice of a single word, "torture," is insufficient to reveal a personal bias against Mother. The trial court's finding of fact that "[Mother] entered a plea of guilty, which removes any uncertainty as to Mother's complicity in the torture of [Wendy]," based on Mother's guilty plea to the crime of felony child

abuse, is insufficient to give a reasonable person grounds to believe that it could not rule impartially in the matter.

Finally, Mother argues that the trial court erred when it made findings of fact as to its own impartiality during the judicial recusal hearing. In *Scott*, the trial judge whose recusal was requested "dictated an oral order making findings of fact and concluding as a matter of law that he could be completely fair and impartial. Accordingly, [he] denied [the] defendant's motion for recusal." *Scott*, 343 N.C. at 325. Our Supreme Court held that, while "[a] trial judge should either disqualify himself or refer the matter to another judge if there is sufficient force in the allegations contained in [the] defendant's motion to proceed to find facts[,]" *id.* at 326 (marks omitted) (quoting *State v. Poole*, 305 N.C. 308, 320 (1982)), "[a]fter carefully reviewing the record and [the] defendant's basis for his recusal motion[,] . . . [the] defendant has not presented substantial evidence of partiality[.]" *Id.* "Since there were no facts presented to cause a reasonable person to doubt [the trial judge's] impartiality, there [was] no error in [the trial judge's] failure to refer the motion to recuse to another judge." *Id.*

In response to Mother's motion for recusal, the trial judge stated in open court:

> I treat every one of these cases based on the evidence that's presented to me. As to being passionate about people following my orders, yes, I am passionate about people following what this [c]ourt orders. And that goes for all the parties.
>
> . . . .

> This TPR, this is whether or not clear, cogent, one of the factors exist as to the parents, that's what we're here for. And this [c]ourt is able to determine whether or not any grounds exist based before it on the evidence put forth. And that's what this [c]ourt always does. That's what this [c]ourt intends to do in this case. And [it] would do so based on what's put before me today.
>
> . . . .
>
> [T]his [c]ourt is going to base any decisions it makes based on the evidence that it finds by clear, cogent and convincing evidence. And if the evidence rises to that[,] the [c]ourt will so rule. But it's only based on whether or not the standard is met based on the evidence here. So[,] if the evidence is not here, I will not be able to find that. If the evidence is here, I will so rule.
>
> For that reason, the motion is denied.

As in *Scott*, Mother has failed to present substantial evidence which would cause a reasonable person to doubt the trial judge's ability to rule impartially. It was not error for the trial judge to fail to refer the motion for her recusal to another judge for consideration. Accordingly, we proceed to determine whether the trial court erred in terminating Mother's parental rights.

## B. Termination of Parental Rights

On appeal from a trial court's termination of parental rights, we first determine whether the trial court's findings of fact underlying the grounds for termination are supported by clear, cogent, and convincing evidence. *In re Z.A.M.*, 374 N.C. 88, 94-95 (2020). Unchallenged findings of fact made by the court are

considered to be supported by competent evidence and are consequently binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97 (1991). After considering the trial court's findings of fact, we must determine whether the findings of fact support the trial court's conclusions of law. *In re T.H.T.*, 185 N.C. App. 337, 343 (2007), *aff'd as modified*, 362 N.C. 446 (2008). We review the trial court's conclusions of law de novo. *In re J.S.*, 374 N.C. 811, 814-15 (2020).

The trial court terminated Mother's parental rights to Opal pursuant to N.C.G.S. §§ 7B-1111(a)(3) and (a)(8), which provide as follows:

> (a) The court may terminate the parental rights upon a finding of one or more of the following:
>
> . . . .
>
> (3) The juvenile has been placed in the custody of a county department of social services, a licensed child-placing agency, a child-caring institution, or a foster home, and the parent has for a continuous period of six months immediately preceding the filing of the petition or motion *willfully* failed to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
>
> . . . .
>
> (8) The parent has committed murder or voluntary manslaughter of another child of the parent or other child residing in the home; has aided, abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of the child, another child of the parent, or other child residing in the home; *has committed a felony assault that results in serious bodily injury to the child, another child of the parent, or other child residing in the home*; or has committed murder or voluntary

> manslaughter of the other parent of the child. The petitioner has the burden of proving any of these offenses in the termination of parental rights hearing by (i) proving the elements of the offense or (ii) offering proof that a court of competent jurisdiction has convicted the parent of the offense, *whether or not the conviction was by way of a jury verdict or any kind of plea . . . .*

N.C.G.S. §§ 7B-1111(a)(3), (8) (2022) (emphasis added).

On appeal, Mother argues that the trial court erred by terminating her parental rights to Opal under N.C.G.S. § 7B-1111(a)(3) because no clear, cogent, and convincing evidence existed to support the trial court's finding of fact that she *willfully* failed to pay towards Opal's care.

Mother also argues that the trial court erred by terminating her parental rights to Opal under N.C.G.S. § 7B-1111(a)(8) because, while she does not dispute that she was previously convicted of a "felony assault that result[ed] in serious bodily injury to . . . [an]other child[,]" Father's daughter Wendy, she does dispute that Wendy was "[an]other child residing in the home" with Opal. N.C.G.S. § 7B-1111(a)(8) (2022). Specifically, Mother contends that the trial court's conclusion that she "committed a felony assault that results in serious bodily injury to the child, another child of the parent, or other child residing in the home pursuant to [N.C.G.S. §] 7B-1111(a)(8)" is unsupported by its findings of fact because "[Wendy] did not reside in the home of [Opal] and Mother at the time of the felonious assault." Mother argues "[i]t [] is undisputed that [Opal] was not the child assaulted, [Wendy] was not Mother's child, and [Opal] was not alive or living in the home at the time of the offense

committed against [Wendy]." However, as Mother notes, "[i]t is [also] undisputed that Mother was convicted of the proscribed offense involving [Wendy], a child living in Mother's home with [Wendy's] father prior to 3 December 2016 when the offense was committed."

Mother argues that "[t]he meaning of 'residing in the home' is unclear and ambiguous for purposes of its application in termination of parental rights. In whose home must [Wendy] have resided – the home of both of the parents, the home of one of the parents, the home of the child at issue in the termination, or the home of the concerned parent and the child at issue?" "When the language of a statute is clear and without ambiguity, it is the duty of [appellate courts] to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *Fid. Bank v. N.C. Dep't of Revenue*, 370 N.C. 10, 18 (2017). "However, when the language of a statute is ambiguous," we look not only to the language of the statute, but also to "the purpose of the statute and the intent of the legislature in its enactment" to determine its appropriate meaning as to the ambiguous term. *Id.* Mother argues that the phrase "residing in the home" is ambiguous because it is susceptible to more than one reasonable interpretation. *See, e.g., State v. Garrett*, 277 N.C. App. 493, 500, *disc. rev. denied*, 378 N.C. 365 (2021) ("Here, the meaning of the term 'opiate' as used in [the statute at issue] was ambiguous, as it was susceptible to more than one reasonable interpretation.").

If an ambiguous statute is susceptible to more than one interpretation, one of which calls into question the statute's constitutionality, "[w]e rely [] on the familiar canon of statutory construction that where one of two reasonable constructions will raise a serious constitutional question, the construction which avoids the [constitutional] question should be adopted." *Delconte v. State*, 313 N.C. 384, 402 (1985) (alteration in original) (marks omitted); *accord In re Dairy Farms*, 289 N.C. 456, 465 (1976). Mother argues that interpreting the phrase "residing in the home" to mean anything other than "the common home residence of Mother, [Opal], and [Wendy]" would be "[in]consistent with a parent's constitutional due process and liberty rights" because "[t]here must be an existing residential nexus between the juveniles and the offending parent at the time of the crime." This argument may be more appropriately raised on appeal under different factual circumstances requiring an interpretation of "residing in the home." However, we need not address the meaning of this phrase in the present case, as—despite Mother's contentions to the contrary—Wendy was a juvenile residing in the home with both Opal and Mother at the time of the offense.

Mother does not challenge any of the trial court's findings of fact regarding the timeline of her offense against Wendy or Opal's birth, and these findings of fact are consequently binding on appeal. The dates of Mother's offense against Wendy spanned from 1 June 2016 until 3 December 2016. During this time period, Wendy resided in the home with Mother and Father. Mother gave birth to Opal on 8 May

2017, approximately five months subsequent to the date of Mother's offense against Wendy.[4]  In North Carolina, it has been long held that "the life of a human being begins at the moment of conception in the mother's womb." *Mackie v. Mackie*, 230 N.C. 152, 154 (1949).  During the time period within which Mother was pregnant with Opal, inclusive of the last date of Mother's offense, Wendy "resid[ed] in the home" with Opal and Mother.  Mother's argument that Wendy was not a child residing in the home with Opal and Mother at the time of the offense fails, and the trial court did not err in terminating Mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(8).

"[A]n adjudication of any single ground for terminating a parent's rights under N.C.G.S. § 7B-1111(a) will suffice to support a termination order.  Therefore, if this Court upholds the trial court's order in which it concludes that a particular ground for termination exists, then we need not review any remaining grounds." *In re J.S.*, 374 N.C. 811, 815 (2020); *accord In re B.O.A.*, 372 N.C. 372, 380 (2019), *In re C.J.*, 373 N.C. 260, 263 (2020); *but see In re E.Q.B.*, ___ N.C. App. ___ (2023), 2023 WL 4873860 (noting that, while a discussion of additional grounds for termination is unnecessary under our single-ground jurisprudence for the purposes of reviewing a termination order, a discussion of all grounds under which a parent's rights are terminated may be appropriate for other purposes, such as future reinstatement

---

[4] There is nothing in the Record indicating that Opal was born prematurely.

hearings). Consequently, we need not address Mother's argument that the trial court erred in terminating her parental rights to Opal under N.C.G.S. § 7B-1111(a)(3), and we affirm the trial court's termination of Mother's parental rights under N.C.G.S. § 7B-1111(a)(8).

## CONCLUSION

Mother failed to provide substantial evidence that the trial judge was biased against her such that a reasonable person would believe the trial court unable to render a fair and impartial ruling in Mother's termination hearing. Furthermore, although the trial judge made findings of fact about her own impartiality, the trial judge did not err in failing to recuse herself from the recusal motion where Mother's allegations did not contain such substantial evidence. Even under Mother's purported interpretation of N.C.G.S. § 7B-1111(a)(8), the trial court did not err in terminating Mother's parental rights to Opal based on her prior conviction for felony child abuse of Wendy. Under our single-ground termination jurisprudence, we need not address Mother's argument concerning N.C.G.S. § 7B-1111(a)(3) for the purposes of this appeal.

AFFIRMED.

Judges HAMPSON and GRIFFIN concur.